### Francis H. Bowers *vs.* The Suffolk Manufacturing Company.

The proprietors of certain real estate in the city of L. laid out and constructed a street through the same, in the manner in which roads are usually built, with a carriage way in the centre, of the ordinary width, after which the street was and continued to be used by the public, without obstruction or objection : They afterwards conveyed a portion of the land, including a part of that over which the street was laid out, to the defendants, with a provision in the deed, that the street should be forever maintained as a road, for the common use of the parties to the conveyance, their successors and assigns, the grantees severally keeping in repair those parts which passed over their respective estates : The proprietors subsequently conveyed to the plaintiff a lot of land bounding on the street and so described, with all the privileges and appurtenances thereto belonging; and then sold at auction all their remaining lands on said street, together with other lands, declaring in the printed conditions of sale, that all the streets mentioned therein (including the street in question) should be reserved and kept open, for the benefit of the abuttors; but that any of them which were not graded might be altered or discontinued, with the consent of the abuttors thereon : And the city afterwards laid out that part of the street on which the plaintiff's lot was bounded as a public highway : It was held, that no intention on the part of the proprietors, to dedicate the street in question to public use, could be inferred from these facts, and that the plaintiff had a right of way in that part of the street not laid out by the city, for an obstruction of which by the defendants, he might maintain an action on the case.

It seems, that in this commonwealth, and especially since the *St.* 1846, *c.* 203, no public way can be established by dedication merely, and without the assent, express or implied, of the city or town, which will be bound by law to keep the same in repair.

This was an action on the case, for the disturbance of a right of way in a street in Lowell called Race street, which the plaintiff claimed as the owner of a lot of land with a dwelling-house thereon situated on said street. The case was tried before *Metcalf*, J., by whom it was reported for the consideration of the whole court. From the judge's report, it appeared, that on the trial, the plaintiff proved the following facts : —

Previous to January 1st, 1832, the Proprietors of Locks and Canals on Merrimack river owned the land over which Race street passed, and also on both sides of it, through its whole length. Sometime between 1829 and 1831, they laid out Race street, extending from Merrimack street, which was then a county road, to Hall street, which was another street laid out about the same time by them, but never laid out

as a public street by the town or city of Lowell or by the county.

In 1830 or 1831 the proprietors proceeded to work the street, which they had so laid out, making a carriage way in the centre of it of the usual width, and in the usual manner in which roads are built, throughout its whole length. From the time this carriage way was so made, the street had been and was used by all persons who wished so to do, without objection, up to the time of the obstruction complained of in this action, and no barrier or gate had ever been set up in any part of it.

On the 1st day of January, 1832, the proprietors conveyed to the defendants the land lying on both sides of the northerly end of Race street, and the land over which the northerly end was laid out, by an indenture of two parts, containing the following provision: " And it is hereby agreed and covenanted by and between the parties, that the streets described in this indenture are to be forever maintained as roads for the common use of the parties hereto, their successors and assigns, each keeping in repair those parts which pass over their respective estates;" and referring to a plan, on which Race street was laid down fifty feet wide and extending from Merrimack street to Hall street. At the date of this conveyance, and for some time subsequent thereto, the proprietors continued to own all the remainder of the land lying on both sides of Race street. Printed signs, lettered " Race Street," were for several years fastened upon some of the dwelling-houses, where they abutted on Race street.

On the 7th of September, 1844, the proprietors conveyed to the plaintiff a lot of land, describing it as situated on Race street in Lowell, and as bounding thirty-nine feet on Race street, on one of its sides, with all the privileges and appurtenances thereunto belonging. On the lot so purchased by the plaintiff, he built, in 1845, a dwelling-house two stories high, in which he continued to reside up to the time of the trial. Before the plaintiff's purchase, four other lots on Race street had been sold by the proprietors to other persons.

In April, 1845, the proprietors proceeded to sell at public auction all the land they owned on Race street, together with a large quantity of other lands in Lowell. The sale was made by a printed catalogue, with printed plans and conditions of sale. On these plans, Race street was laid down fifty feet wide, and extending from Merrimack street to Hall street; and the proprietors' land thereon was divided into twenty lots. One of the printed conditions of sale was as follows : " The streets mentioned in the catalogue and laid out on the plans are all to be reserved and kept open for the benefit of the abuttors, but they are not all graded. Any street reserved, and not graded, may be altered or discontinued with the consent of all the abuttors thereon." All the lots on Race street were sold at the auction to different individuals, and before the obstruction sued for in this action was made, twenty buildings had been erected, chiefly dwelling-houses, besides the boarding-houses of the defendants. It was admitted, that the defendants knew of the auction sale, and of the printed plans, and also of the conditions of sale, and made no objection thereto.

In 1846, the city of Lowell laid out a portion of Race street, extending from Merrimack to Dodge street, as a public street, and the plaintiff's lot was situated on the portion so laid out. In the spring of 1847, the proprietors, without the consent of the plaintiff, express or implied, dug up Race street about midway between Merrimack and Hall streets, and constructed a canal one hundred feet wide entirely across it, and raised the street where it crossed the canal about seven and one half feet, and in the course of the summer following, built on the west side of the street a bridge across the canal, twenty-eight feet wide. The plaintiff's house was situated between Merrimack street and the canal.
. In June, 1847, the defendants commenced, immediately north of the canal, on the land conveyed to them in 1832, and on that part thereof not laid out by the city, digging up Race street; and between June and October, excavated in that place a hole about eighteen feet deep, extending across thirty feet of the width of Race street, and fifty feet of its

length, and put in a wheel-pit with the necessary stone foundations, and also other foundations of stone on which a permanent and large building could be erected; which wheelpit and foundations remained until the trial, rendering that part of Race street covered by them impassable.

The plaintiff offered evidence tending to show, that the pit and foundations were made for the purpose of erecting thereon, as soon as could conveniently be done, a brick mill which would cover over thirty feet of the width of Race street, and forty-nine feet of its length. The agent of the defendants was called by them to the stand, and testified that the defendants had no present purpose of erecting a mill over that part of the pit and foundations in Race street, though they made such pit and foundations, claiming a right to erect a mill over them, and now claimed that right; but they intended, for the present, to roof over the pit, raising it as high above the street as it formerly existed, as the bank of the canal, which was about seven and one half feet, and then so covering it over and sloping it off, that the surface could be used as a street; and that the defendants did not know, and had not determined, that they ever should erect a mill on the foundations so put in on Race street, though they claimed the right so to do.

While the defendants were digging the pit, and putting in the foundations, the canal aforesaid was in the course of being built by the proprietors, and no one could then or can now pass from that part of Race street immediately southerly of the place occupied by such pit and foundation, to that part of Race street so occupied; and the banks of the canal would have raised the street to the same elevation and slope as the agent of the defendants testified the roof over the pit and foundation would raise it.

No special damage was proved to have been suffered by the plaintiff.

Upon this evidence, the presiding judge was of opinion, that by force of the deed to the plaintiff from the proprietors of the locks and canals, and the conveyance to the defendants by the same proprietors, and the other facts in the case

the plaintiff was entitled to a right of way in and over the length and breadth of Race street, and that the acts of the defèndants, taking the testimony of their agent as true, were such an obstruction as would entitle the plaintiff to maintain this action.

A verdict for nominal damages was accordingly taken for the plaintiff, subject to the opinion of the whole court, on the above facts and evidence. If the opinion of the presiding judge was incorrect, then the verdict is to be set aside, and a new trial granted; otherwise judgment is to be rendered upon the verdict.

*B. R. Curtis*, for the defendants.

If Race street was a public highway, this action cannot be maintained, because no special damage was proved. All that is necessary to make a public way by dedication is, that the intention of the owner of the land to dedicate it to that use should distinctly appear from his acts and declarations; and that the public should, pursuant to that intention, actually enjoy the use of the way. Both these facts are clearly shown by the evidence in this case. *Hobbs* v. *Lowell*, 19 Pick. 405; *Springfield* v. *Hampden*, 10 Pick. 59, 67; *Valentine* v. *Boston*, 22 Pick. 75.

Being a public way, an obstruction therein is a public injury, and the appropriate remedy is by indictment. *Rex* v. *Lloyd*, 1 Camp. 260; *Rex* v. *Barr*, 4 Camp. 16; *State* v. *Catlin*, 3 Verm. 530.

The act of 1846, *c.* 203, has no application to this case: 1st, Because its effect is limited to an exemption of the town from the charge of maintaining the ways therein mentioned; and this exemption is quite consistent with the right of the public to use the way, and the duty of the land owner to refrain from obstructing it. See *Commonwealth* v. *Charlestown*, 1 Pick. 180. 2d, Because this way is not within the descriptive words of the first section; for it had not only been opened and dedicated to the public use, but it had become a public way long before the statute was passed. This statute, therefore, together with the case of *Hobbs* v. *Lowell*, would go far to prove that this way was chargeable

on the town, if it were necessary to settle that point, which it is not.

Even if the plaintiff has any right by grant, such right is nothing superior to, or different from, the public right. Every thing in the deed to the defendants in 1832, is not only consistent with a dedication to the public as a highway, but it is consistent with nothing else. It had been laid out and built as a street, and was then in actual use by the public as such. It is called a street in the deed, and no such thing is known, either in a common or a legal sense, as a private street. The covenant, that the parties shall keep it in repair, is only an agreement between the parties, that each will repair so much as lies within his own land. *Rugby Charity* v. *Merryweather*, 11 East, 376, n.; *Woodyer* v. *Hadden*, 5 Taunt. 125; *Jarvis* v. *Dean*, 3 Bing. 447.

But the plaintiff did not acquire any special private right in the way. At the time of the deed to him, in 1844, it was a public street over which he in common with all others had a right to pass; and any injury to him was an injury to the whole public. The reason why a private action is not allowed for an obstruction to a public way is, that it would lead to a multiplicity of suits; for if one man might have an action, all men might have the like. Co. Lit. 56, a; *Williams's Case*, 5 Co. 72; *Boulston's Case*, 5 Co. 104. And why might not all men have the like here? They have the same right as the plaintiff, and they are injured to the same extent. Neither has suffered any special damage, and whatever is recovered is for a violation of the right, which belongs to them, as well as to him.

Even conceding that the deed conferred on the plaintiff a right, as against his grantors, that there should be a way there, and estopped them from denying, that there was a street or way to the extent of the land on that side, and implied that there was such a street; *Parker* v. *Smith*, 17 Mass. 413; *O'Linda* v. *Lothrop*, 21 Pick. 292, 297; the whole implication is satisfied by the existence of a public street there; indeed, it may be doubted whether any other way would

satisfy the implied covenant, a public way then existing, and being described in the deed as " Race street." The language of the deed must be applied to the then existing state of facts and to the kind of way actually in use. *Clap* v. *M'Neil*, 4 Mass. 589.

*J. G. Abbott*, for the plaintiff. ·

WILDE, J. This was an action on the case for a disturbance of the plaintiff's right of way in and over a certain street in the city of Lowell, called Race street. Upon the facts and evidence reported, the presiding judge at the trial was of opinion, that the plaintiff was entitled to maintain his action ; and a verdict was thereupon taken in his favor for nominal damages, subject to the opinion of the whole court. The truth of the facts stated by the witnesses was not disputed at the trial, and they are to be taken as true.

Upon these facts, we think it very clear, that the plaintiff, by a grant from the proprietors of the land over which Race street had been laid out by them, did acquire a good title to the right of way claimed, for the disturbance of which the defendants are liable, unless they can maintain the ground taken in the defence.

The defendants maintain that Race street was a public way by dedication by the proprietors of the land ; and if so, that a nuisance therein is indictable as for the violation of the public right, but that no private action can be maintained except for special damages ; and that no such damages were proved or claimed in the present case. This ground of defence, we are of opinion, may be well maintained, if in fact Race street was a public way. This fact it is incumbent on the defendants to prove, and the question is, whether it does clearly and distinctly appear by the facts and evidence reported.

It has been argued, that all which was necessary to make such a way by dedication is, that the intention of the owner of the land to dedicate it to public use should distinctly appear from his acts and declarations ; and that the public should, pursuant to that intention, actually enjoy the use of the way.

But if such be the law, we are nevertheless of the opinion, that the defence cannot be maintained. The facts proved and reported fail to indicate an intention of the proprietors of the land to dedicate the street in question to public use. It is true, that it was laid out by them as a street; that they in 1830 or 1831 built a carriage way over it in such manner as is usual in working and building public streets; and that from the time this carriage way was made until the spring of 1847, the way was used by the public without obstruction or objection. If these had been all the facts proved, we do not doubt, that the intention of the proprietors to dedicate the way to public use might be reasonably inferred. But other facts were proved at the trial, which appear to the court to be inconsistent with such an intention. In the first place, it appears by the conveyance of a lot of land, over which Race street had been laid out, from the proprietors to the defendants, that the streets described in the conveyance (including Race street) were to be forever maintained as roads for the common use of the parties thereto, their successors and assigns, each keeping in repair those parts which passed over their respective estates. And it appears also, that afterwards the proprietors sold at public auction all their land on Race street, and that one of the printed conditions of sale was as follows, namely: " The streets mentioned on the catalogue and laid out on the plans (which included Race street) are all to be reserved and kept open for the benefit of the abuttors, but they are not all graded. Any street reserved and not graded may be altered or discontinued with the consent of the abuttors thereon."

These facts certainly indicate no intention of dedicating these streets to public use, but quite the contrary. The proprietors knew, doubtless, that while the streets remained open, the public would use them as occasion might require, and to such use they had no objection, for they made none; yet such use was incidental; the streets were not laid out for that purpose, but for the use and accommodation of the abuttors thereon, and a right was reserved to them to alter or discon-

tinue any street which had been reserved but not graded These facts are entirely inconsistent with an intention of dedicating these streets to public use, and are decisive of the case.

But if the evidence were otherwise, and the intention of the proprietors of the land to dedicate these ways to the use of the public had been distinctly and clearly proved, we are by no means of opinion, that this defence could be maintained On the contrary, we are strongly inclined to the opinion, that whatever may be the law in England, in this commonwealth, no public way can be established by dedication merely, and without the assent, express or implied, of the city or town bound by law to keep it in repair. If such were not the law, any land owner, as Morton, J., justly remarks in *Hobbs* v. *Lowell*, 19 Pick. 405, 411, might for his own interest, and without regard to public convenience or necessity, establish a highway and subject the town within which it lies to the burden of supporting it. The question, however, was not decided in that case ; as it was proved that the dedication of the road was acquiesced in by the surveyors of highways, the selectmen of the town, and the town itself in which the road was laid out. And it seems to be clearly intimated, that if it had been necessary to decide the question, it would have been decided, that without such acquiescence the way would not have been considered as a public way. The chief justice, in delivering the opinion of the majority of the court, refers to the case of *The King* v. *Leake*, 5 B. & Ad. 469, in which it was held, that to constitute a highway by dedication, the assent of the parish was not necessary ; and after speaking of such a doctrine, he adds : " It is manifest, however, that there is very little analogy between the character, powers and duties of parishes in England, and those of towns in this common‑ wealth." And certainly there seems to be no good reason, why such a hardship should be imposed on cities and towns, without their assent, and without any opportunity to make their objections ; when, as Morton, J., remarks in *Hobbs* v. *Lowell*, " proper tribunals are empowered to inquire when

and where new roads are needed, and to proceed to lay out such as the public exigencies may require, having due regard to private rights and public burdens."

But if there were any doubts on this point previous to the *St.* of 1846, *c.* 203, it seems to me they must be removed by that statute. The statute provides, that no way heretofore opened and dedicated to the public use, and not already become a public way, shall become chargeable upon any city or town of this commonwealth, unless such way shall be laid out and established by the city or town, in the manner prescribed by the statutes of this commonwealth. It .has been argued, for the defendants, that this way is not within the descriptive words of the statute, because it had become a public way long before the statute was passed. But it appears to me, that it is a much more reasonable construction of the statute, to hold that the ways referred to, as having been dedicated and become public ways, were such as the way in Lowell which had been adjudged a public way, and as to which the dedication had been assented to or acquiesced in by the town, and not to ways like that in this case, where no such assent or acquiescence had been proved; but as to which, on the contrary, it was proved, that in 1846, the city of Lowell laid out a portion of said Race street as a public street. If the way became a public way as soon as used, without the assent of the city of Lowell, it might become a public way immediately after it was laid out and dedicated and prepared for use, for it might then be used by the public; and so is the law in England, as it was laid down in the case of *Woodyer* v. *Hadden,* 5 Taunt. 125, 137: " No particular time," it is said, " is necessary for evidence of a dedication ; it is not, like a grant, presumed from length of time ; for if the act of dedication be unequivocal, it may take place immediately ; for instance, if a man builds a double row of houses opening into an ancient street at each end, .making a street, and sells or lets the houses, that is instantly a highway."

It cannot, we think, be inferred from the language of the statute that it was intended to sanction such a doctrine, as

29 *

the law of Massachusetts; for if such were the law, no one could suppose that there was a way in the commonwealth, which had been dedicated to public use, which had not also become a public way.

It has been also argued for the defendants, that the exemption of the city from the charge of maintaining the way in question is not inconsistent with the right of the public to use the way, and the duty of the land owner to refrain from obstructing it. This is only true in part. The land owner, in such case, may not be entitled to maintain trespass against any one who might pass over it while it remained open, but he might shut up the way, and the right of passing over it would thereby be terminated; the opening of the street amounting to a license, and not to a grant or dedication. And it is very clear, that no indictment for a nuisance on such a way could be maintained. By the second section of the statute above referred to, the mayor and aldermen of each city, and the selectmen of each town in the commonwealth, are required, whenever the public safety may demand it, to cause the entrances of all such ways to be closed up, in order to caution the public against entering thereupon.

Such ways, therefore, cannot be considered as public ways; for if they had been so considered, cities or towns would have been bound to keep them in repair, instead of closing up the entrances, as required by the statute.

For these reasons, we are strongly inclined to the opinion, as before remarked, that the defence in this case could not be sustained, although it were admitted, that the proprietors of the land did lay out and open the way in question with the intention to dedicate it to the public use, there being no evidence of the assent of the city of Lowell to such dedication; but, on the contrary, a portion of the said way was laid out by the city as a public street in 1846, long after the supposed dedication. *Judgment on the verdict.*